UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KENNETH SMITH,

          Plaintiff,

    v.                                    Case No. 14-CV-1533

CAROLYN COLVIN,

          Defendant.

## DECISION AND ORDER

### INTRODUCTION

Plaintiff Kenneth Smith suffers primarily from back pain and alleges that, as a result, he is disabled. On December 2, 2011, Smith applied for Supplement Security Income and Social Security Disability Insurance benefits. (Tr. 229-34.) His application was denied initially and on reconsideration. (Tr. 91-96.) An administrative law judge (ALJ) likewise concluded after a full hearing that Smith was not disabled. (Tr. 31.) The Appeals Council denied review, and Smith filed the present action seeking a direct award of benefits or, in the alternative, remand pursuant to Sentence Four of 42 U.S.C. § 405(g). (ECF No. 1 at 2.) Because the Appeals Council denied review, the ALJ's decision is the final decision of the Commissioner. *Moore v. Colvin*, 743 F.3d 1118, 1120

(7th Cir. 2014). In accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have both consented to the full jurisdiction of a magistrate judge. (ECF Nos. 4, 6.)

## ALJ'S DECISION

In determining whether a person is disabled, an ALJ applies a five-step sequential evaluation process. At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). The ALJ found that Smith was not so engaged. (Tr. 21.)

Step two considers whether the claimant has a medically determinable impairment, or combination of impairments, that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). "In order for an impairment to be considered severe at this step of the process, the impairment must significantly limit an individual's ability to perform basic work activities." *Moore*, 743 F.3d at 1121. If the evidence indicates that an impairment is a slight abnormality that has no more than a minimal effect on an individual's ability to work, then it is not considered severe for step two purposes. *Id.* The ALJ concluded that Smith's severe impairments were "disorders of the spine status post T5-T11 laminectomy and fusion." (Tr. 21.) However, the ALJ also found that Smith's asthma and mental impairments were not severe. (Tr. 21.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of

impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926) (called "the Listings"). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria set forth in a listing and also meets the duration requirement, 20 C.F.R. § 416.909, the claimant is disabled. If the claimant's impairment or combination of impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. The ALJ found that Smith did not have any impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments, including Listing 1.04. (Tr. 21.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the claimant's ability to perform physical and mental work activities on a regular and continuing basis despite limitations from her impairments. *Moore*, 743 F.3d at 1121. In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 416.920(e), 416.945. In other words, the RFC determination is a "function-by-function" assessment of the claimant's maximum work capability. *Elder v. Astrue*, 529 F.3d 408, 412 (7th Cir. 2008). The ALJ concluded that Smith

> has the residual functional capacity to perform light work…except he is limited to occasional climbing of ramps or stairs; he is limited to no climbing of ladders, ropes, or scaffolds; and he is limited to occasional stooping, crouching, kneeling, or crawling.

(Tr. 23.)

3

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. § 416.920(f). The term "past relevant work" means work performed within the last fifteen years or fifteen years prior to the disability's onset. 20 C.F.R. § 416.920(e). The ALJ concluded at step four that Smith could perform "past relevant work as a counter clerk." (Tr. 29.) Based on testimony from a vocational expert, these positions did not require Smith to perform work-related activities excluded from the RFC determination. (Tr. 30-31.) Because the ALJ found that Smith could perform past relevant work, he concluded that Smith was not disabled and did not proceed to step five. (Tr. 31.)

## ANALYSIS

The court's role in reviewing an ALJ's decision is limited. It does not look at the evidence anew and make an independent determination as to whether or not the claimant is disabled. Rather, the court must affirm the ALJ's decision if it is supported by substantial evidence. *Moore*, 743 F.3d at 1120. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1120-21 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Thus, it is possible that opposing conclusions can both be supported by substantial evidence. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

It is not the court's role to reweigh evidence or substitute its judgment for that of the ALJ. *Moore*, 743 F.3d at 1121. Rather, the court must determine whether the ALJ complied with his obligation to build an "accurate and logical bridge" between the evidence and his conclusion that is sufficient to enable a court to review the administrative findings. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). "This deference is lessened, however, where the ALJ's findings rest on an error of fact or logic." *Thomas*, 745 F.3d at 806. If the ALJ committed a material error of law, the court cannot affirm his decision regardless of whether it is supported by substantial evidence. *Beardsley*, 758 F.3d at 837; *Farrell v. Astrue*, 692 F.3d 767, 770 (7th Cir. 2012).

Smith contends that the ALJ committed several errors. First, he alleges that the ALJ's RFC assessment was faulty because it did not account for any limitations from Smith's depression, for variable functioning, or for Smith's need to alternate sitting with standing and walking. Second, he contends that the ALJ improperly discounted the opinions of treating medical sources Dr. Tyre and Dr. Wilson. And, lastly, he argues that the ALJ's assessment of Smith's credibility was improper. One issue that permeates all of these arguments is the ALJ's discussion of Smith's activities of daily living. Therefore, the Court will address that discussion first.

5
Case 2:14-cv-01533-WED   Filed 02/22/16   Page 5 of 16   Document 23

## A. Activities of Daily Living

Throughout the RFC determination the ALJ cited Smith's activities of daily living as evidence that he was not disabled. (*See, e.g.*, Tr. 26, 28.) Without any citations to the record, the ALJ stated that Smith as a single parent cares for his three children, "does not have any problems with bathing, grooming or personal hygiene," prepares meals for the family, performs household chores, shops for food and other items, and so on. (Tr. 23.) Smith's ability to engage in these various activities was one of the reasons the ALJ gave little weight to the opinions of Smith's treating physicians and found Smith's testimony regarding the intensity, persistence, and limiting effects of his symptoms not entirely credible.

For starters it is noted that household and work activities are not necessarily interchangeable. *See Hughes v. Astrue*, 705 F.3d 276, 278-79 (7th Cir. 2013); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) (finding the ALJ's "casual equating of household work to work in the labor market cannot stand"). The United States Court of Appeals for the Seventh Circuit has cautioned ALJs against placing undue weight on a claimant's household activities in assessing his ability to hold a job outside the home. *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006).

The ALJ here is not only guilty of equating Smith's ability to engage in various household tasks with an ability to work full time, more importantly he exaggerated Smith's limited role in accomplishing the listed tasks. For instance, the statement that

Smith was "the primary caretaker for his three children the youngest of whom is four-years-old" (Tr. 28) ignores that Smith testified that he required substantial assistance from family, friends, and his ex-wife to care for his children. (Tr. 58-59, 289, 291.) Indeed, as Smith's pain worsened, his children visited his ex-wife more. (Tr. 938.) Similarly, Smith testified that he only went grocery shopping and did chores with the assistance of others. (Tr. 64, 296-99, 329-31.) Perhaps the ALJ did not believe Smith's testimony. But he did not cite to anything in the record that suggested that Smith was being untruthful about the level of his daily activities.

The commissioner acknowledges that the ALJ misrepresented some of Smith's activities of daily living but maintains that the error was harmless and that remand is unnecessary. (ECF No. 21 at 9-10.) Misrepresenting the record may constitute harmless error if the decision was nevertheless overwhelmingly supported by the record and remand would be a waste of time. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). The court cannot confidently say that is the case here. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (finding the harmless error doctrine must be narrowly construed so as to not be "an exercise in rationalizing the ALJ's decision."). On remand, the ALJ must either cite evidence of Smith's ability to engage in daily activities that conflicts with his testimony or, alternatively, reconsider the portions of the decision in which the ALJ cites Smith's activities of daily living.

### B. Medical Opinions

Smith alleges that the ALJ improperly assigned little weight to the opinions of treating physicians Dr. Timothy Tyre and Dr. Julie Wilson. As a general rule, ALJs must consider all of the relevant evidence in the record to determine whether a claimant is disabled. *See* SSR 96-8p; 20 C.F.R. § 416.945(a)(3). In doing so, the ALJ must consider every opinion from acceptable medical sources and assign each medical source's opinion an appropriate weight. *See* 20 C.F.R. § 416.927(b)-(c). Treating sources' opinions must be assigned "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques [and] not inconsistent with the other substantive evidence in the individual's case record." SSR 96-2p. Treating sources' opinions not assigned controlling weight, along with the opinions of non-treating sources, are assigned weight based on seven factors. 20 C.F.R. § 416.927(b).

While assigning little weight to the opinions of Drs. Tyre and Wilson, the ALJ assigned "great weight" to the opinions of medical consultant Dr. Mina Khorshidi. (Tr. 26-29.) Affording more weight to the opinions of nonexamining sources than to the opinions of examining sources is contrary to a common notion found in the social security regulations: "Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 CFR § 416.927(c)(1). When an ALJ gives more weight to a nonexamining source, courts "take

notice and await a good explanation for this unusual step." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) (citing *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

   1.   Dr. Timothy Tyre

Dr. Tyre, Smith's treating pain psychologist, completed a Musculoskeletal Impairment Medical Assessment form in which he opined that Smith suffered from moderate pain and other symptoms, including tenderness, muscle weakness, impaired sleep, and chronic fatigue. (Tr. 730-31.) He opined that, during an eight-hour workday, Smith would be off-task more than thirty percent of the time, would be able to maintain work pace less than fifty percent of the time, could not sit for more than twenty minutes, and could not sit, stand, or walk for more than a total of two hours. (Tr. 731-32.) The ALJ assigned Dr. Tyre's opinions little weight for several reasons, including that they were inconsistent with Smith's activities of daily living, treatment records, and Smith's Global Assessment of Functioning (GAF) scores. (Tr. 28.) In addition to the problems regarding his discussion of Smith's activities of daily living, there are other problems with the reasons he gave for discounting Dr. Tyre's opinion.

One reason the ALJ gave for assigning Dr. Tyre's opinion little weight was because Dr. Tyre advised Smith to get an attorney after his disability claim was denied. The ALJ concluded that this advice suggested a secondary motive on Dr. Tyre's part to assist Smith in obtaining disability benefits. But that was total conjecture on the part of the ALJ. It is as likely that the reason Dr. Tyre told Smith to get a lawyer once his claim

9

was denied was because Dr. Tyre genuinely believed that Smith was disabled rather than because he was motivated by some desire to "help" Smith.

With regard to Dr. Tyre's opinion that Smith suffered from chronic fatigue that would hinder his ability to function (Tr. 731), the ALJ found the opinion was inconsistent with other evidence in the record indicating that Smith's insomnia had been treated successfully and that his sleep was generally restored. (Tr. 28.) In reaching that conclusion, the ALJ cited various treatment records. However, he utterly ignored evidence that supported Dr. Tyre's opinion. That is to say, the ALJ impermissibly "cherry-picked" the record. *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013). The ALJ failed to address evidence that Smith's fatigue persisted despite treatment (*see, e.g.*, Tr. 473, 593, 640, 724, 793, 747, 806, 850, 912, 924). While the ALJ did not need to address every piece of evidence, he could he ignore entire lines of evidence. *See, e.g.*, *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (remanding ALJ decision for ignoring contrary evidence).

Another reason the ALJ assigned Dr. Tyre's opinion little weight was that it suggested Smith had a level of functioning that was more limited than suggested by the GAF score of 60 given to Smith by Dr. Tyre. (Tr. 28.) Smith's scores ranged from between 45 and 70 points. (Tr. 743, 945.) For reference, claimants with a GAF score between 41 and 50 are deemed to have serious difficulty functioning due to mental impairments; 51 to 60 have moderate difficulty in functioning; and 61 to 70 have mild

difficulty. Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law & Procedure in Federal Court § 5:30 (2016).

A GAF score, however, only indicates how the claimant functions in a controlled environment at the time of the test. *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *see also Garrison v. Colvin*, 759 F.3d 995, 1003 (9th Cir. 2014). Dr. Tyre opined on Smith's ability to function in a work environment, outside of a controlled environment. Moreover, the ALJ's reliance on a GAF score underscores his tendency to ignore or discount evidence supporting Smith's disability claim. *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) ("Seizing upon the GAF of 60 to conclude that Yurt was not substantially impaired is precisely the type of cherry-picking of the medical record that we have repeatedly forbidden.").

As a result of the problems enumerated above, the court finds that the ALJ failed to offer a good explanation for assigning little weight to Dr. Tyre's opinion and must remand the case for further consideration.

2. *Dr. Julie Wilson*

Dr. Wilson, Smith's treating primary care doctor, also completed a Musculoskeletal Impairment Medical Assessment in which she opined that during an eight-hour workday Smith only could sit for fifteen minutes at a time and for a total of less than two hours, and could stand or walk for a total of not more than two hours. (Tr.

168, 170.) She also opined that Smith would require an unscheduled break every hour and require more than four days off of work per month. (Tr. 170-71.)

One reason the ALJ assigned Dr. Wilson's opinion little weight was because "she had only seen the claimant twice over a period of approximately 20 months when she rendered her opinion in July 2012." (Tr. 27.) The ALJ however was mistaken. The record shows that before rendering her opinion Dr. Wilson treated Smith on at least five occasions, not two. (Tr. 590, 602, 609, 812, 900.) Far from a trivial error, it suggests that ALJ both did not appreciate the full extent of Dr. Wilson's treating relationship with Smith and did not consider Dr. Wilson's whole treatment record. Courts are less deferential to an ALJ's conclusion that rests on mistaken facts. *Thomas*, 745 F.3d at 806. When viewed in concert with the misrepresented activities of daily living, the ALJ must reassess Dr. Wilson's opinion.

Given the above errors, the ALJ failed to support with substantial evidence his decision to assign Drs. Tyre's and Wilson's opinions little weight.

Addressing these errors may impact Smith's separate argument that the ALJ failed to (1) consider whether Smith's depression was a severe impairment; (2) include Smith's variable functioning in his RFC; and (3) include Smith's need to alternate between sitting and standing in his RFC. (ECF No. 14 at 9-12.) To support these arguments, Smith cited to Drs. Tyre's and Wilson's opinions and treatment records. Whether the ALJ needs to address the issues that Smith now raises depends on how

much weight the he assigns to the opinions of Drs. Tyre and Wilson on remand. After the ALJ reassigns weight to their opinions, he must consider whether Smith's depression constitutes a severe impairment and whether his RFC should include the two limitations identified by Smith.

**C.     Credibility**

The ALJ found that Smith's testimony regarding the intensity, persistence, and limiting effects of his mental impairment and back pain was not entirely credible for a variety of reasons. An ALJ's credibility determination will not be upset unless it is "patently wrong," *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013), or "divorced from the facts contained in the record." *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008). An assessment of the claimant's credibility requires an assessment of the entire case record. SSR 96-7p. Evidence that is frequently relevant to this analysis includes

> (1) The individual's daily activities; (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms…; and (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* For a court to have the opportunity to render meaningful review, the ALJ must rationally explain his credibility determination based on specific findings from the record. *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011).

One reason the ALJ gave for finding that Smith's alleged level of pain was not entirely credible was that "[t]he treatment notes indicate that the pain appeared to be muscular more than neurogenic." (Tr. 25.) But it is unclear how the cause of pain (muscular, not neurogenic) undermines Smith's credibility regarding the amount of pain that he is in, and neither the ALJ nor the Commissioner offers an adequate explanation. As Smith says, pain is pain, regardless of its source. If the ALJ believes that the cause of the pain is relevant in evaluating Smith's credibility regarding the extent of pain he is experiencing, he needs to explain why. He did not.

Another reason proffered by the ALJ for finding Smith's testimony not entirely credible was that Smith "does not take any narcotics painkillers for pain control." (Tr. 26.) The suggestion is that a claimant who possesses the level of pain that Smith alleges would be taking narcotics in an attempt to control his pain. Assuming that to be true, and the ALJ does not point to anything to support such a conclusion, there is evidence that Smith does not consume narcotics because he's allergic to the medication (*see, e.g.*, Tr. 426, 339, 578), not because his pain is insubstantial.

The ALJ also discounted Smith's credibility because he concluded that during the hearing Smith underrepresented his ability to exercise. (Tr. 26.) According to the ALJ, "[t]he claimant testified his only form of exercise is walking in a pool during aqua therapy. However, the treatment notes show him hiking and walking [and] sledding with his children [and] wrestling with his children." (Tr. 26.) The transcript of the

14

Case 2:14-cv-01533-WED   Filed 02/22/16   Page 14 of 16   Document 23

administrative hearing, however, suggests that Smith was responding only to what exercise he performs for rehabilitation. (Tr. 49-50.) It is unreasonable (and unfair) to discount a claimant's credibility for his responses to unclear questions.

Other reasons that the ALJ offered for disbelieving Smith about the extent of his pain were Smith's daily activities and his ability to get restful sleep. As discussed above, however, both observations misrepresented the record.

The court finds that the ALJ's credibility determination is divorced from the record and must be reassessed on remand.

## CONCLUSION

In accordance with Sentence Four of 42 U.S.C. § 405(g), this matter must be remanded for further proceedings. On remand, the ALJ must reconsider the opinions of Drs. Tyre and Wilson. If the ALJ assigns more weight to either opinion, then he must explain whether Smith's depression constitutes a severe impairment and whether the RFC determination should include limitations for Smith's variable functioning and need to alternate between sitting and standing. Additionally, the ALJ must reassess the credibility of Smith's pain and mental impairments.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and pursuant to § 405(g), Sentence Four, this matter is **remanded** for further proceedings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 22nd day of February, 2016.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge